UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINTEN FERNALD, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br>v.<br><br>SOUTHWEST AIRLINES CO., a Texas corporation,<br><br>     Defendants. | Case No.: 11cv0453 AJB (POR)<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE SECOND, THIRD, FOURTH, AND FIFTH CAUSES OF ACTION IN PLAINTIFF'S FIRST AMENDED COMPLAINT |

Presently before the Court is Defendant Southwest Airlines Co.'s ("Southwest") motion to dismiss the second, third, fourth, and fifth causes of action in Plaintiff Quinten Fernald's ("Fernald") First Amended Complaint ("FAC"). For the following reasons, the motion is **GRANTED WITH PREJUDICE**.

**I.**

**BACKGROUND**

Unlike most airlines, Southwest does not pre-assign seats on its planes. Instead, passengers receive a boarding position in the order in which they check in for a flight. They then choose their seats once aboard the plane. Despite this general policy, Southwest has instituted several programs that create boarding priority. Specifically, passengers who purchase a "Business Select" fare typically get the most desirable boarding positions and board the plane first. "A-list" passengers (very frequent flyers) receive

boarding numbers immediately after Business Select passengers. The next priority goes to those who participate in the Early Bird Check In ("EBCI") program, followed by all other passengers. (FAC at ¶¶ 1-3.)

At issue here is the EBCI program. For a ten-dollar fee, participants are automatically checked in between twenty-five and thirty-six hours prior to departure, depending when they purchased EBCI. They are assigned boarding numbers ahead of the general boarding passengers, who may check in only within twenty-four hours of departure. (*Id.* at ¶¶ 3, 9-13.)

Fernald alleges that on two separate occasions, despite paying ten dollars for EBCI, he received a boarding slot behind the boarding slot obtained by his travel companion, who did not purchase EBCI. (*Id.* at ¶¶ 22-32.) He further alleges that in "a significant number of instances" EBCI passengers received boarding slots behind general boarding passengers and, as a result, did not receive the benefit they were promised for the additional ten-dollar fee. (*Id.* at ¶ 3.)

Fernald filed his action in state court, alleging five causes of action: (1) breach of contract, (2) unjust enrichment, (3) violations of the California Consumer Legal Remedies Act ("CLRA"), (4) violations of the Unfair Competition Law ("UCL"), and (5) statutory false advertising in violation of Cal. Bus. & Prof. Code § 17500. He claims to represent a nationwide class of persons "who purchased EBCI between the program's inception and the present." (*Id.* at ¶ 34.) On March 4, 2011, Southwest removed the original complaint under the Class Action Fairness Act. Fernald then filed his First Amended Complaint on March 10, 2011. Southwest filed the instant motion to dismiss on March 25, 2011.

## II.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts

to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009) (citations omitted).

## III.

## DISCUSSION

Southwest moves to dismiss the second, third, fourth, and fifth causes of action on the grounds that they are preempted by the Airline Deregulation Act ("ADA").[1] Southwest separately argues that the second cause of action fails because unjust enrichment is a remedy, not a claim for relief.

**A.     Preemption Under the ADA**

The instant motion's central issue is whether the ADA preempts Fernald's claims, which challenge Southwest's EBCI program. The ADA includes a preemption provision that a state "may not enact or enforce a law . . . related to a ***price, route, or service*** of an air carrier . . . ." 49 U.S.C. § 41713(b)(1) (emphasis added).

The U.S. Supreme Court has broadly construed the "related to" language in the ADA preemption clause. In *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384-86 (1992), the Supreme Court found that the words "related to" in the preemption provisions "express a broad pre-emptive purpose" and prohibit all "[s]tate enforcement actions having a connection with, or reference to," the rates, routes, or services of an air carrier. The Court held that the ADA preempted false advertising claims against an

---

[1] Southwest's motion to dismiss excludes Fernald's first cause of action, which is for breach of contract.

airline, since an attempt to restrict fare advertising relates to price. *Id.* at 388-91. Similarly, in *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), the Supreme Court held that claims regarding an airline's frequent flyer program related to airline rates and services and were thus preempted under the ADA. *Id.* at 223-24. The Court affirmed *Morales'* broad reading of the preemption doctrine, but it carved out a narrow exception for state-law breach of contract claims involving a plaintiff seeking to enforce the actual terms of his contract with the airline. *Id.* at 228-33.

Fernald's claims clearly do not implicate Southwest's routes. The question before the Court is therefore whether Fernald's claims "relate to" the two remaining preemption categories: Southwest's prices or services. Southwest asserts that under the case law's broad interpretation of ADA preemption, the claims relate to both prices and services and are consequently preempted. Fernald argues that the claims relate to neither prices nor services.

### 1. Price

Fernald claims that the ten-dollar charge for EBCI "has no relation to the price" of a Southwest ticket. However, as Southwest points out, the term "price" is broader than the amount charged for the airline ticket itself. Specifically, the ADA defines price as "a rate, fare, or charge." 49 U.S.C. § 40102(a)(39). This is further supported by the case law, which has repeatedly applied ADA preemption to claims involving fees, taxes, and other charges collected by airlines. *See, e.g.*, *Wolens*, 513 U.S. at 226 (determining that the claims "relate to rates, *i.e.*, American's charges in the form of milage credits for free tickets and upgrades"); *Buck v. Am. Airlines*, 476 F.3d 29, 34-35 (1st Cir. 2007) (holding that the ADA preempted state law claims against airlines for failing to return various fees and taxes); *Hickcox-Huffman v. U.S. Airways, Inc*., __ F. Supp. 2d __, 2011 WL 1585560, *4 (N.D. Cal. April 27, 2011) (finding the plaintiff's claims "involve Defendant's prices . . . , as she wants Defendant to refund the baggage fees it collected in relation to bags it failed to timely deliver"). Additionally, *Morales* found that even the advertising of fares has a direct link to prices. *Morales,* 504 U.S. at 388-89.

Here, similarly, Southwest's EBCI program is essentially a ten-dollar fee to select a better seat. Logically, that is tied to Southwest's prices—under both the plain language of the ADA and the case law's application of it. As Southwest notes, airlines regularly charge higher prices for better seats, which

is entirely consistent with the competitive free market the ADA seeks to promote. The Court concludes that Fernald's claims challenging the EBCI program "relate to" Southwest's prices and are therefore preempted by the ADA.

### 2. Service

The Court's finding that Fernald's claims relate to price is a sufficient stand-alone basis for ADA preemption. However, as an additional basis for preemption, the Court further finds that the claims "relate to" Southwest's services.

Southwest argues that by offering passengers the opportunity to select a better seat, it is providing a "service" under the ADA. In *Wolens,* the Supreme Court recognized that "services" under the ADA include "class-of-service upgrades." 513 U.S. at 226*; see also Farash v. Continental Airlines*, 574 F. Supp. 2d 356 (S.D.N.Y. 2008) (ADA preempted claims relating to quality of seat assignment). Similarly, here, the EBCI program is a service that provides passengers with an opportunity to upgrade their seat selection.

Fernald relies heavily on the Ninth Circuit's decision in *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259 (9th Cir. 1998) as more narrowly construing the scope of "services" under the ADA.[2] However, as Southwest argues, *Charas* no longer appears to govern, due to the subsequent U.S. Supreme Court decision in *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364 (2008), which adopted a broader definition of service. As *Rowe* and its progeny demonstrate, *Charas*'s more limited definition is no longer good law. *See, e.g.*, *Air Transp. Ass'n of Am.*, 520 F.3d 218, 223 (2d Cir. 2008) ("*Charas*'s approach, we believe, is inconsistent with the Supreme Court's decision in *Rowe*."); *Nat'l Federation of the Blind v. United Air Lines, Inc.*, 2011 WL 1544524 (N.D. Cal. April 25, 2011) ("The *Charas* definition of 'service' . . . is called into question by the subsequent Supreme Court holding in *Rowe* . . . . While *Charas* defined 'service' narrowly, *Rowe* put forth a more expansive view.").

Moreover, even if *Charas* still governed, it is factually distinguishable—especially when viewed in conjunction with the ADA's purpose. *Charas* involved personal injury claims arising out of physical

---

[2] Specifically, *Charas* limits the term "service" to the "prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail." *Charas*, 160 F.3d at 1265-66.

incidents onboard aircraft, which are very different from Fernald's claims regarding the EBCI program. Deregulation likely was not intended to extend to personal injury tort claims, which generally are not a basis for competition among airlines. By contrast, seat selection and price relate directly to deregulation's purpose, since airlines routinely compete with regard to prices and priority seating. This critical distinction is discussed in *Tanen v. Southwest Airlines Co.*, 187 Cal. App. 4th 1156, 1170-71 (Cal. Ct. App. 2010):

> What is relevant under *Wolens* and the other federal cases discussed above is not whether the services provided by the airline are "peripheral," but rather whether the relevant state laws have a direct or "peripheral" effect on deregulation. *Charas* and other cases concluded that the ADA did not displace state tort laws because providing a remedy for personal injuries has only a peripheral effect on competition—presumably because airlines do not compete on the basis of the remedies they will offer passengers who are injured during flights. *Airlines do compete with one another with regard to the various services they provide*, and passengers may well choose to purchase a travel certificate on one airline rather than another based on the certificate's expiration date or lack thereof. (Emphasis added.)

Here, Southwest directly competes with other airlines that provide First Class seats and premium economy seats to entice passengers, who may very well choose to fly on one airline rather than another based on their ability to obtain preferential seating. Consequently, failure to preempt Fernald's claims would "frustrate the goal of economic deregulation by interfering with the forces of competition." *Hickcox-Huffman*, 2011 WL 1585560 at *3 (citing 160 F.3d at 1263).

Fernald's state-law claims regarding the EBCI program therefore "relate to" Southwest's services, in addition to Southwest's prices. They are thus preempted by the ADA on two separate grounds.

**B.     Unjust Enrichment**

As a separate argument, Southwest asserts that Fernald's unjust enrichment claim fails because unjust enrichment is not recognized as a cause of action in California. However, since the Court finds the ADA issue to be determinative, it is unnecessary to discuss the merits of this argument.

## IV.

## CONCLUSION

Because the ADA preempts Fernald's claims, the Court **GRANTS** Southwest's motion to dismiss the second, third, fourth, and fifth causes of action in Fernald's FAC. The Court does not see any set of

circumstances in which these state-law claims can survive preemption. Because an attempt to amend would be futile, the Court dismisses the claims **WITH PREJUDICE**.

IT IS SO ORDERED.

DATED: September 28, 2011

_____
Hon. Anthony J. Battaglia
U.S. District Judge